IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DENNIS L. MIX II,

                Plaintiff,

    v.

THOMAS LINDH, KAITLIN AHLERS,
ANGELICA ROWEN-FOX, DENISE
VALERIUS, JAY TURNER, TRAVIS HAAG
and NICK PESAVENTO,

                Defendants.

OPINION AND ORDER

18-cv-516-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se plaintiff and prisoner Dennis L. Mix II is proceeding with Eighth Amendment and state law claims that prison medical staff at Columbia Correctional Institution failed to provide him a back brace or other treatment for his chronic back pain, and that security staff refused to provide him ice that had been prescribed by his doctor. (I have amended the caption to reflect the correct spelling of defendants' full names.) There are several motions before the court.

      First, plaintiff filed a motion stating that he was missing his legal work, including a copy of his amended complaint. Dkt. #36. He then filed a motion stating that he had been moved to a segregation cell and was being denied his legal work and his back, ankle and knee braces. Dkt. #39. A few days later, plaintiff filed a letter stating that he had received his legal work, knee brace and pain medication, and he had been notified that his back brace had

1

expired. Dkt. #54. Because plaintiff has stated that he received his legal work, knee brace and pain medication, I will deny his motions related to those matters as moot. As for his request relating to his back brace, I will not order prison staff to provide a back brace to plaintiff if his prescription for the brace has expired. Plaintiff should contact health services and ask to see a doctor about renewing his back brace prescription.

Also before the court is plaintiff's motion for court assistance in recruiting counsel. Dkt. #55. Plaintiff says that he needs counsel because this case is complex, he has no legal training and he has had difficulty locating and interviewing inmates who were witnesses to the relevant events. However, I am not persuaded that the legal or factual difficulty of this case exceed plaintiff's ability to litigate it. Pruitt v. Mote, 503 F.3d 647, 649 (7th Cir. 2007). As discussed below, plaintiff cannot succeed on his Eighth Amendment claims against defendants because the undisputed facts do not support a finding that any defendant acted with deliberate indifference to plaintiff's serious medical needs. The assistance of counsel would not have changed the outcome of the case.

Plaintiff has also requested permission to depose several inmate witnesses. Dkt. #58. I will deny that motion as well. Under the Federal Rules of Civil Procedure, depositions must be recorded, and the party requesting the deposition must arrange and pay for the recording. Fed. R. Civ. P. 30(b)(3). Plaintiff does not say how he would pay to record the depositions he requests, and this court does not have funds to pay for inmates to take depositions. Moreover, the inmate witnesses identified by plaintiff would not change the outcome of this case. As discussed below, even if I accept plaintiff's version of events as true,

he cannot succeed on his Eighth Amendment claims.

This brings us to defendants' motion for summary judgment.  Dkt. #40.  I will grant summary judgment to defendants on plaintiff's Eighth Amendment claims because plaintiff has failed to submit evidence showing that defendants acted with deliberate indifference to his back pain   I decline to exercise supplemental jurisdiction over plaintiff's state law claims, so I will dismiss those claims without prejudice to plaintiff.  Plaintiff can raise them in state court.

From the defendants' proposed findings of facts and plaintiff's responses, I find the following facts to be material and undisputed unless otherwise noted.


UNDISPUTED FACTS

A.  Plaintiff's Back Brace

Plaintiff Dennis Mix has a history of scoliosis and back pain. While he was incarcerated at the Wisconsin Secure Program Facility, he was prescribed pain medication, physical therapy, a medical ice bag and a back brace to help with realignment and support. (Defendants say that plaintiff purchased the back brace from the canteen and that it was not provided by the health services unit at Wisconsin Secure Program Facility.  However, defendants cite no evidence to support this assertion.)  On July 27, 2017, plaintiff was transferred to the Columbia Correctional Institution.  All of his property, including his back brace, was confiscated when he was transferred.  By August 7, plaintiff still had not received his brace, so he wrote to the health services unit requesting that it be sent to him.  His health

services request stated, "I need my back brace? Physical therapy (see restriction)." Dkt. #42-1 at 48.

Defendant Angelica Rowen-Fox, a registered nurse, reviewed plaintiff's request. She checked plaintiff's health records, which showed that Dr. Syed at the Wisconsin Secure Program Facility had written an order on May 15, 2017, stating, "Ref. To PT – need back brace x 1 yr." Dkt. #61-5. Rowen-Fox interpreted this order as meaning that Dr. Syed had referred plaintiff to physical therapy to evaluate whether he needed a back brace. She did not think that Dr. Syed had ordered that plaintiff receive a back brace on May 15, 2017. (A nurse at Wisconsin Secure Program Facility interpreted Syed's order differently, and entered a medical restriction for plaintiff stating that he could use a back brace for one year. According to plaintiff, he had been using a back brace even before that order was entered.)

Rowen-Fox then reviewed plaintiff's physical therapy records from the Wisconsin Secure Program Facility. She noted that during plaintiff's initial evaluation on July 15, 2017, plaintiff had told the physical therapist that a brace had been ordered, but that he had not yet received it. Rowen-Fox thought that plaintiff must have been mistaken, as she did not think that Dr. Syed had ordered a back brace. The physical therapist provided plaintiff in-cell exercises for his back. After reviewing plaintiff's medical records, Rowen-Fox responded to plaintiff's health service request on August 7, 2017, stating that she had reviewed his physical therapy evaluation and that there was no order for a back brace. Dkt. #42-1 at 48.

Plaintiff submitted another health services request on August 9, 2017, which

4

defendant Rowen-Fox received on August 11. Plaintiff again asked for his back brace, asking health services to check the "restrictions sheet" from the Wisconsin Secure Program Facility for the order of a lumbar back brace. Dkt. #42-1 at 49. Rowen-Fox reviewed plaintiff's medical records again. She responded to plaintiff that there was no order for a lumbar back brace in the physical therapist's notes and that plaintiff was scheduled for sick call to be evaluated by a nurse on August 16. Dkt. #42-1 at 49. (Rowen-Fox apparently did not check plaintiff's "restrictions sheet" from the Wisconsin Secure Program Facility, as it is undisputed that the restrictions sheet stated that plaintiff had a back brace.)

On August 13, 2017, plaintiff submitted another health services request stating that his back hurt and that naproxen was not working. Defendant Denise Valerius, a registered nurse, reviewed the request and scheduled plaintiff to be seen by an advanced care practitioner. Dkt. #42-1 at 50.

On August 25, 2017, plaintiff submitted a medication refill and request form asking for a back brace. (It is not clear from the records whether he had been seen by a nurse or doctor at this point.) Health services responded that the medication room did not have back braces and that plaintiff should submit a health services request to nursing staff. Also on August 25, plaintiff submitted an interview and information request addressed to the health services manager. He wrote that he had an order for a back brace and that health services was denying it. On August 30, the health services unit manager responded that plaintiff had been scheduled for sick call.

Plaintiff was seen by a nurse (not a defendant in this case) on August 31, 2017. He

showed her his restrictions sheet from the Wisconsin Secure Program Facility and explained that medical restrictions are in the Department of Corrections' computer system, known as the Wisconsin Integrated Corrections System. The nurse checked the computer system and confirmed that plaintiff did have a back brace restriction noted in the computer system. She told plaintiff to talk to the correctional officers about getting it for him from the property department. (Defendants say that the restriction noted in the computer system must have been "erroneously prepared" because Dr. Syed had not ordered a back brace. However, defendants cite no admissible evidence to support this proposed finding of fact. They have not provided any statement from Dr. Syed about whether he had ordered a back brace, and instead rely solely on their own speculation about what Dr. Syed intended and about what plaintiff had been provided.)

Plaintiff submitted another health services request on September 8, 2017, asking about whether a doctor's appointment was scheduled to discuss changing his pain medication, asking where his back brace was (the property department did not know), and asking for ice and a double mattress. Defendant Valerius responded on September 10, confirming that plaintiff did have an appointment scheduled, stating that double mattresses were not permitted at Columbia for anyone and instructing him to discuss ice and a back brace with the doctor at his appointment.

Plaintiff saw Dr. Syed on October 30, 2017. Syed noted that plaintiff had low back pain. He discontinued plaintiff's naproxen and ordered ibuprofen and Tylenol, referred plaintiff to physical therapy for his low back and knee pain, issued bilateral elastic knee

braces, made a referral for apex shoes to the special needs committee and ordered a follow-up appointment.

On November 21, plaintiff submitted a health service request, stating that Dr. Syed had ordered an ice bag, physical therapy, knee braces and a referral to special needs for shoes, but that plaintiff had not yet received any of these things. Defendant Valerius reviewed plaintiff's medical records and Syed's order and noted that there was no order for ice. Valerius told this to plaintiff and told him that he was on the waiting list to see physical therapy, that the special needs committee would be conducting their evaluation the following week and that he would get his knee sleeves the following week.

On December 11, 2017, plaintiff saw a nurse for his lower back pain. The nurse noted that plaintiff reported that wearing a back brace helped with his pain. (It is not clear from the records or from plaintiff's statements what back brace plaintiff was wearing at this appointment. Plaintiff says that staff never found the brace that he had used at the Wisconsin Secure Program Facility. However, at some point after nursing staff found his back brace restriction in the computer system, health services gave him a back brace that was too small. He eventually fashioned a back brace out of an ACE bandage and two pieces of cardboard.) A few days later, Dr. Syed ordered a medical ice bag for plaintiff.

Plaintiff saw a physical therapist at the Columbia Correctional Institution on January 10, 2018. The physical therapist recommended plaintiff do in-cell exercises for his back.

On January 20, 2018, plaintiff submitted a health services request for a larger back brace. Defendant Valerius responded on January 27, scheduling him to be seen in the

7

health services unit. On February 5, 2018, the health services unit received another health service request from plaintiff stating that his lumbar brace had "grown too small."

On February 21, 2018, a nurse fitted plaintiff for a larger back brace. The health services unit ordered plaintiff a new back brace in the correct size. For reasons that are not clear from the records, plaintiff did not receive the new back brace until sometime in June 2018.

### B. Plaintiff's Medical Ice

In January 2018, plaintiff had an order for medical ice to be given up to three times a day. Medical ice is provided during medication passes, which occur four times a day. Inmates who have orders for medical ice have bags that are collected by correctional officers, who then fill the bags from the ice machine in the dayroom.

On January 11, 2018, plaintiff asked defendant Nick Pesavento, a correctional officer, to fill his ice bag during the evening medication pass. Defendant Sergeant Travis Haag told Pesavento that plaintiff had already had ice three times that day, so Pesavento refused to fill plaintiff's ice bag. (Plaintiff says that he had not had ice three times already and that Haag was lying because plaintiff had complained previously about security staff.)

On January 12, 2018, plaintiff was out of his cell for programming during morning medication pass. When plaintiff returned to his cell, he asked defendant Kailtlin Ahlers, a correctional officer, if he could have his ice. Because medication pass was completed, Ahlers told plaintiff that he would need to wait until afternoon medication pass. Ahlers thought

8

that medical ice could be delivered only during medication passes and that if inmates were not at their cell door during medication pass, they could not have ice. (Plaintiff says that Ahlers told him that she did not care that he was at programming and that he had to be standing at his door like everyone else to receive ice. Ahlers denies saying that she did not care about plaintiff.) Later that day, plaintiff asked Haag if he could speak to a psychologist because he was upset that he did not get his medical ice bag. Haag wrote plaintiff a conduct report, stating that plaintiff became upset and began yelling loudly, disrupting the unit and making threatening statements about Haag and other staff. (Plaintiff says that he remained calm and that Haag fabricated the conduct report.) After this incident, the unit manager told staff that if an inmate is out of his cell attending programming during medication pass, he may receive his prescribed medication or treatment when he returns to his cell.

On March 19, 2018, plaintiff did not get medical ice during the afternoon medication pass. According to plaintiff, he handed his ice bag to defendant Thomas Lindh, a correctional officer, but Lindh never brought it back. Plaintiff says that Lindh told him that he needed to focus on getting inmates to the showers because showers were more important than ice. Lindh does not remember March 19, but denies that he would have told plaintiff that showers were more important than medical ice.

On March 25, 2018, plaintiff did not get his medical ice during medication pass. Plaintiff says he gave his ice bag to defendant Jay Turner, a correctional officer, but Turner never brought it back. Turner does not remember March 25, but says that he would not have intentionally deprived plaintiff of his ice unless there was some other urgent matter

9

that took precedence over ice delivery.

Plaintiff says that defendant Lindh also denied him ice on March 28. Lindh does not remember that date, but according to the unit log, there were several security incidents around afternoon and evening medication passes, involving two inmates who refused to close their cell traps and two inmates returning from the unit who required strip or pat-down searches. These incidents would have taken precedence over ice delivery.

OPINION

A. Eighth Amendment

The Eighth Amendment's prohibition on cruel and unusual punishment "protects prisoners from prison conditions that cause 'the wanton and unnecessary infliction of pain,'" including "grossly inadequate medical care." Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). To prevail on a claim based on deficient medical care, a plaintiff must demonstrate two elements: (1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition. Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011). The first element, an objectively serious medical condition, is satisfied if a physician has diagnosed the condition as requiring treatment, or the need for treatment would be obvious to a layperson. Pyles, 771 F.3d at 409. There is no dispute in this case that plaintiff's chronic back pain was a serious medical condition that required treatment.

There is a dispute about the second element of plaintiff's claim, "deliberate

indifference," which is a subjective standard. <u>Arnett</u>, 658 F.3d at 751. "Deliberate indifference" means that the officials were aware that the prisoner faced a substantial risk of serious harm but disregarded the risk by consciously failing to take reasonable measures to address it. <u>Forbes v. Edgar</u>, 112 F.3d 262, 266 (7th Cir. 1997).

1. <u>Nurse Rowen-Fox and Nurse Valerius</u>

Plaintiff contends that defendants Nurse Rowen-Fox and Nurse Valerius acted with deliberate indifference to his serious health needs by disregarding his requests for his back brace and by failing to provide him any other effective treatment.

Plaintiff's frustration with the health services unit at Columbia Correctional Institution is understandable, particularly with respect to his requests for his back brace. Plaintiff has submitted undisputed evidence showing that he had a back brace when he arrived at the Wisconsin Secure Program Facility, that Dr. Syed ordered in May 2017 that plaintiff use a back brace for another year, that a nurse at the Wisconsin Secure Program Facility confirmed the order on plaintiff's restrictions sheet, that plaintiff was transferred to Columbia with a back brace, and that he never received his brace after arriving at Columbia. Defendants argue that plaintiff never had a prescription for a back brace, but they cite no evidence to support their argument or to refute plaintiff's evidence. In addition, defendants concede that Columbia's health services unit eventually ordered plaintiff a new back brace in the correct size, after plaintiff had requested a brace for several months. Defendants do not explain why health services would have ordered plaintiff a back

brace if he did not have a prescription for one.

That being said, plaintiff has not submitted evidence that would support a constitutional claim against either Rowen-Fox or Valerius. The evidence suggests that when Rowen-Fox reviewed plaintiff's first health services request on August 7, 2017, she understood plaintiff to be saying that he had a physical therapist's order for a back brace. Rowen-Fox proceeded to review plaintiff's prescriber orders and physical therapy records. Rowen-Fox interpreted Dr. Syed's order as referring plaintiff to physical therapy to evaluate the need for a back brace. Because plaintiff's physical therapy records did not include an order for a back brace, Rowen-Fox concluded that plaintiff did not have an order for one. In response to plaintiff's second health service request on August 11, 2017, Rowen-Fox again reviewed plaintiff's physical therapy records and concluded that there was no order for a back brace. Rowen-Fox apparently never reviewed plaintiff's restrictions sheet and never accessed the Wisconsin Integrated Corrections System. If she had, she would have seen that plaintiff did have an order for a back brace and that he was transferred to Columbia with a back brace.

However, plaintiff has submitted no evidence suggesting that Rowen-Fox's failure to check the computer system was anything more than a mistake. Mistakes, inadvertent errors, negligence, gross negligence or even malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996). There is no evidence in the record to support a conclusion that Rowen-Fox knew that plaintiff needed a back brace, but disregarded his need. After she

concluded that plaintiff did not have an order for a back brace, she scheduled him for a health services appointment so he could be evaluated. Her actions do not amount to deliberate indifference.

Defendant Valerius's actions also fail to support a deliberate indifference claim. Valerius responded to several health services requests that plaintiff submitted. In response to each request, Valerius scheduled plaintiff to be seen by a doctor or nurse, confirmed that plaintiff had been scheduled or provided education to plaintiff. As a registered nurse, Valerius did not have authority to provide additional treatment to plaintiff, such as ice, pain medication or a brace. In addition, plaintiff has not submitted any evidence suggesting that either Rowen-Fox or Valerius was responsible for the several-month delay in plaintiff's receipt of the properly-sized back brace. Thus, although I am sympathetic to plaintiff's complaints about his treatment, he has not shown that either Rowen-Fox or Valerius was responsible for the most significant delays in his receiving his back brace or that either of them acted with deliberate indifference to his serious health needs.

2. Correctional officer defendants

Plaintiff also contends that defendants Pesavento, Ahlers, Haag, Turner and Lindh acted with deliberate indifference when they refused to provide him medical ice on a number of occasions. Most of the defendants do not remember whether they delivered ice to plaintiff on the dates in question. However, they state that if they failed to deliver ice to plaintiff, it was because they either thought plaintiff had received it already, that plaintiff

was not entitled to it because he was away from his cell or because a security issue took precedence over ice delivery. Defendants deny that they refused plaintiff ice simply because they did not like him.

Plaintiff says that defendants intentionally denied him ice on at least some occasions. However, even if I accept plaintiff's version of events as true, I would conclude that plaintiff cannot succeed on an Eighth Amendment claim against defendants. Although it is undisputed that plaintiff suffered from back pain, plaintiff has not shown that he suffered serious harm, or that any defendant believed he would face a substantial risk of serious harm, from his being denied ice on a handful of occasions. Construing the evidence in plaintiff's favor, defendants believed delivering medical ice was a lower priority than delivering other medications, offering showers to inmates or handling security issues. Although this was no doubt frustrating to plaintiff, he has submitted no evidence suggesting that defendants' assessment of priorities constituted deliberate indifference to a substantial risk of serious harm to his health. Therefore, the security staff defendants are entitled to summary judgment on plaintiff's Eighth Amendment claims against them.

B. State Law Negligence

Plaintiff is proceeding on state law negligence claims against defendants as well. The general rule is that federal courts should relinquish jurisdiction over state law claims if all federal claims are resolved before trial. 28 U.S.C. § 1367(c)(3); Burritt v. Ditlefsen, 807 F.3d 239, 252 (7th Cir. 2015). In this instance, I will decline to exercise supplemental

jurisdiction over plaintiff's state law claims because I am granting summary judgment to defendants on all of the federal claims. Plaintiff may refile these claims in state court, subject to the applicable Wisconsin statute of limitations.

ORDER

IT IS ORDERED that

1. Plaintiff Dennis Mix II's motions regarding a missing copy of his amended complaint, dkt. #36; being denied back, ankle and knee braces, pain medication and legal paperwork, dkt. #39; for assistance in recruiting counsel, dkt. #55; and leave to depose prisoners, dkt. #58, are DENIED.

2. The motion for summary judgment filed by defendants CO Lind, CO Ahlers, Nurse Arf, Nurse Valerius, CO Turner, Sergeant Haag and Nick Pesavento, dkt. #40, is GRANTED IN PART and DENIED IN PART. The motion is GRANTED with respect to plaintiff's Eighth Amendment claims against all defendants, and the motion is DENIED in all other respects.

3. Plaintiff's state law negligence claims are DISMISSED without prejudice under 28 U.S.C. § 1367(c)(3).

4. The clerk of court is directed to enter judgment accordingly and close this case.

Entered this 30th day of January, 2020.

BY THE COURT:

/s/

_____

BARBARA B. CRABB

District Judge